UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ROGER TOWERS,

    Plaintiff,

v.

COUNTY OF SAN JOAQUIN,

    Defendant.

No. 2:17-cv-02597-JAM-KJN PS

ORDER AND FINDINGS AND RECOMMENDATIONS

Presently pending before the court are defendant's motion to dismiss (ECF No. 11) and plaintiff's motion for partial summary judgment. (ECF No. 13.) An opposition and a reply were filed to each motion. (ECF Nos. 23–26.) These motions came on regularly for hearing on March 8, 2018, at 10:00 a.m. At the hearing, plaintiff appeared and represented himself, and Derek Cole appeared on behalf of defendant County of San Joaquin ("County"). (ECF No. 28.)

After carefully considering the parties' briefing, the oral argument at the hearing, and the applicable law, the court recommends that defendant's motion to dismiss be granted; plaintiff's complaint be dismissed with prejudice, without leave to amend; and plaintiff's motion for partial summary judgment be denied as moot.

I.    BACKGROUND

Plaintiff's allegations in this matter can be placed into two categories: claims about the County's land use designation of plaintiff's property as Open Space/Resource Conservation

1

("OS/RC"); and claims about the restraining orders obtained by the County against plaintiff. The background facts discussed below are taken from plaintiff's complaint (see Complaint, ECF No. 1 ["Compl."]) and the public records attached to the County's request for judicial notice (see Request for Judicial Notice, ECF No. 27 ["RJN"]).[1]

A. Land Use Designation (Towers I, II, and IV)

Plaintiff Roger Towers along with Catherine Towers, who is not a party to this matter, have been challenging San Joaquin County's land use designation of their property for the better part of two decades. Indeed, as defendant points out, this is plaintiff's fifth lawsuit against the County (ECF No. 11-1 at 2), including a 2004 state court challenge ("Towers I") to the land use designation (see RJN, Ex. 1); a 2009 state court challenge ("Towers II") to the same land use designation (see RJN, Ex. 7)[2]; and a 2016 federal court challenge ("Towers IV") to the County's 2035 General Plan, which also incorporated the same land use designation (see Towers et al. v. Villapudua et al., Case No. 2:16-CV-02417-MCE-KJN). Each of these cases is discussed in more detail below.[3]

Much of the relevant factual and procedural history was recited in Towers II by the California Third District Court of Appeal in an unpublished opinion, affirming the trial court's

---

[1] The court may take judicial notice of court filings and other matters of public record. Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2006). The court takes judicial notice of each of the exhibits attached to defendant's RJN, notwithstanding plaintiff's objections (see ECF No. 24 at 8–11) because each is either a court filing or other public record. At the same time, while the court takes judicial notice of pleadings and other public filings here, the court does not—and need not for the purposes of this order—assume the truth of unsubstantiated allegations contained there within.

[2] While RJN, Ex. 7 is a copy of the appellate opinion in Towers II, for ease of reference the court cites directly to the opinion rather than to the exhibit. Compare Towers v. Cty. of San Joaquin, No. C073598, 2017 WL 3275178, (Cal. Ct. App. Aug. 2, 2017), reh'g denied (Aug. 28, 2017), review denied (Nov. 1, 2017) with RJN, Ex. 7.

[3] The third lawsuit referenced by defendant ("Towers III") concerns related but different issues to the instant matter. In that case, plaintiff "alleg[ed] that in 2014 the County . . . acted improperly in enacting County ordinance No. 4454, which benefitted mining operators by extending the previously approved deadline for initiating land use entitlements by an additional 24 months." Towers v. Cty. of San Joaquin, No. C080667, 2018 WL 671356, at *1 (Cal. Ct. App. Feb. 2, 2018). That matter was dismissed by the superior court because plaintiff failed to join indispensable parties. Id. The California Third District Court of Appeal affirmed, on appeal. Id.

2

judgment against the Towers. See Towers v. Cty. of San Joaquin, No. C073598, 2017 WL 3275178 (Cal. Ct. App. Aug. 2, 2017), reh'g denied (Aug. 28, 2017), review denied (Nov. 1, 2017). As the Third District Court of Appeal explained:

> In March 2001, [Roger and Catherine Towers] bought three adjacent parcels of land totaling approximately 19 acres in the Vernalis area in southern San Joaquin County. . . .
>
> The nearby land with the mining operations and most of plaintiffs' three parcels are in an area designated by the County as OS/RC, an area of regional significance containing significant mineral resources. . . . [First so classified] in 1988 and reiterated . . . in 2012. In accordance with [state law], the County in its "General Plan 2010," adopted July 29, 1992, included within the general plan conservation element a "General Plan 2010 Map" designating specific areas as OS/RC to protect significant natural resources areas.
>
> The OS/RC requirements of the general plan were implemented through the County's zoning code, which. . . . specified that landowners who want a "nonextractive project" such as a residence . . . must file an application for site approval with the County, which has discretion to approve or disapprove it.
>
> Before plaintiffs purchased the three parcels in 2001, plaintiffs consulted with County staff. Staff informed plaintiffs that the property was designated OS/RC in the county general plan adopted on July 29, 1992, and plaintiffs could not build on the land without first obtaining a "site approval" from the County, which the County had discretion to approve or disapprove.
>
> [. . .]
>
> In 2002, the Towers applied for site approval to build a house on each of the three parcels. . . . The application was administratively approved by county staff but two mining companies, who were applying for quarry excavation permits in the area, appealed. The planning commission subsequently granted the appeal and revoked the Towers' site approval permits on January 9, 2003. The Towers appealed to the board of supervisors, which denied the appeal on March 25, 2003.
>
> Thereafter, the Towers submitted a preliminary application for a general plan amendment to change their property's designation. They withdrew the application when they learned the County was not approving applications that created additional demand on groundwater.
>
> On February 24, 2004, the Towers filed an administrative appeal of the County's determination that their property is within the OS/RC land use area. Plaintiffs argued their property should be designated general agricultural (AG), which would mean they could build their houses as a matter of right. . . .

3

|   |   |
|---|---|
| 1 | The planning commission denied the Towers' administrative appeal seeking redesignation. |
| 2 | |
| 3 | Thereafter, the Towers appealed to the board of supervisors, which denied the appeal on April 27, 2004. |
| 4 | On June 18, 2004, plaintiffs filed [Towers I] in the trial court . . . seeking judicial review of the County's refusal to redesignate their property. However, plaintiffs did not prosecute that case. . . . [Rather] plaintiffs—"[s]eeking a remedy as a less costly and more efficient alternative to litigation"—explored settlement and asked the County for a "Development Title" (zoning) amendment to allow non-extractive projects for parcels within the OS/RC area for which excavation was infeasible. The County ultimately rejected plaintiffs' proposed zoning amendment in June 2008. Plaintiffs applied for a permit to use their land for a truck-parking facility with a residence for "security." The County denied the application for a residence. In October 2009, the trial court dismissed [Towers I], without prejudice, due to plaintiffs' failure to bring the matter to trial within five years (Code Civ. Proc., § 583.310). |

Using a simpler layout for the rest:

        The planning commission denied the Towers' administrative appeal
        seeking redesignation.

        Thereafter, the Towers appealed to the board of supervisors, which
        denied the appeal on April 27, 2004.

        On June 18, 2004, plaintiffs filed [Towers I] in the trial court . . .
        seeking judicial review of the County's refusal to redesignate their
        property. However, plaintiffs did not prosecute that case. . . .
        [Rather] plaintiffs—"[s]eeking a remedy as a less costly and more
        efficient alternative to litigation"—explored settlement and asked
        the County for a "Development Title" (zoning) amendment to allow
        non-extractive projects for parcels within the OS/RC area for which
        excavation was infeasible. The County ultimately rejected
        plaintiffs' proposed zoning amendment in June 2008. Plaintiffs
        applied for a permit to use their land for a truck-parking facility
        with a residence for "security." The County denied the application
        for a residence. In October 2009, the trial court dismissed [Towers
        I], without prejudice, due to plaintiffs' failure to bring the matter to
        trial within five years (Code Civ. Proc., § 583.310).

        [. . .]

        Plaintiffs initiated [Towers II] on December 1, 2009. . . . [and
        listed] five "causes of action" for five remedies they seek:

        [. . .]

        (3) Petition for writ of administrative mandate (Code Civ. Proc., §
        1094.5) seeking to require the County to change the general plan's
        OS/RC designation for plaintiffs' property;

        [. . .]

        (5) A claim for money damages for alleged civil rights violations
        (42 U.S.C. § 1983), claiming the County's actions deprived
        plaintiffs of property interests in violation of federal due process
        and equal protection. . . .

Towers II, 2017 WL 3275178, at *3–6.

The trial court rulings in Towers II included a June 28, 2011 order by the San Joaquin Superior Court. (RJN, Ex 4 at 69–84.) The court observed that the third cause of action essentially sought "an order from the Court . . . directing the County to vacate its April 27, 2004 decision on [the Towers'] appeal by which the County upheld the decision that [their] property is within the OS/RC . . . land designation." (Id. at 70.) The court noted that "the three-year statute of limitations applied to the Third Cause of Action and that the cause accrued on April 27, 2004—the date [the Towers'] appeal was denied." (Id. at 73.) Furthermore, the court held that

the Towers "had presumptive knowledge that the maps were wrong and yet, allowed their timely challenge to the April 27, 2004 decision to uphold the OS/RC designation to lapse and ultimately, be dismissed." (Id. at 75.) As a result, the San Joaquin Superior Court sustained the County's demurrer and dismissed the third cause of action without leave to amend. (Id. at 84.)

On January 8, 2013, the San Joaquin Superior Court granted summary adjudication on the procedural and substantive due process claims contained in the fifth cause of action. (RJN, Ex. 4 at 7, 116–19.) Specifically, the court concluded that the "County ha[d] carried its burden of showing that [the Towers do] not have a constitutionally protected property interest in a Site Approval. . . . Therefore, [the Towers] cannot not establish the required elements for the due process cause of action." (Id. at 117.)

The San Joaquin Superior Court ultimately entered judgment against the Towers (RJN Ex. 4 at 6–8) and the Third District Court of Appeal affirmed, explaining in relevant part:

> We first conclude that plaintiffs have no basis to challenge the OS/RC designation of their land or the allegedly "phony maps," because plaintiffs have forfeited those matters by failing to provide any legal authority or analysis on appeal to challenge the trial court's conclusion that those claims are barred by the statute of limitations (Code Civ. Proc., § 338, subd. (d)).
>
> Plaintiffs' pleading raised these claims in the third count seeking administrative mandamus to undo the County's denial of plaintiffs' application to redesignate their property from OS/RC to agricultural zoning. In the fifth cause of action, the pleading repeated the designation and map matters among the alleged civil rights violations (42 U.S.C. § 1983).
>
> The trial court eliminated the third count on demurrer because the claim was barred by the three-year statute of limitations, in that the 2009 lawsuit was not filed within three years of the County's 2004 refusal to redesignate plaintiffs' parcels.
>
> [. . .]
>
> However, [on appeal] plaintiffs present no argument, analysis, or authority that the trial court erred in ruling the statute of limitations barred the state law claims, and plaintiffs present no argument, analysis, or authority, that they can revive these barred claims by alleging they violate federal civil rights.
>
> [. . .]
>
> Moreover, the bar of the statute of limitations forecloses not only the third count challenging the designation, but also the fifth count

> alleging federal civil rights violations, because the state statute of limitations governs the length of the limitations period for the federal civil rights action (42 U.S.C. § 1983). (Wallace v. Kato (2007) 549 U.S. 384, 387 [166 L.Ed.2d 973, 980]; Roman v. County of Los Angeles (2000) 85 Cal.App.4th 316, 322–323.)
>
> Accordingly, we disregard plaintiffs' complaints about the OS/RC designation and the maps.
>
> [. . .]
>
> . . . To prove a due process cause of action under section 1983, a party must, as a threshold matter, show ""'a liberty or property interest within the protection of the Fourteenth Amendment. [Citation.] A property interest is defined as 'a legitimate claim of entitlement to [a benefit].' [Citation.] Thus, 'to have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it.'"" ([Golden Gate Water Ski Club v. County of Contra Costa (2008) 165 Cal.App.4th 249,] 268.)
>
> Plaintiffs rehash all of their foregoing arguments under the guise of deprivation of a legitimate claim of entitlement. However, we have explained that none of plaintiffs' arguments have merit. Accordingly, none can serve as a legitimate claim of entitlement to support a due process claim.
>
> We conclude plaintiffs fail to show grounds for reversal as to their federal civil rights claim.

Towers II, 2017 WL 3275178, at *15–16, 28.

The Towers' petition for rehearing in Towers II was denied on August 28, 2017 (RJN, Ex. 8), and on November 1, 2017, the California Supreme Court denied their petition for review (RJN, Ex. 9).

Meanwhile, on September 29, 2016, the San Joaquin County Planning Commission held a public hearing concerning the proposed 2035 Plan, and at the hearing, Roger Towers spoke in opposition to the plan. (Comp. ¶ 13.)

On October 11, 2016, Roger and Catherine Towers filed Towers IV in federal court, against the County and several other defendants. 2:16-CV-02417-MCE-KJN, ECF No. 1. The Towers raised several allegations, related to the land use designation of their property. The complaint included a claim that the County violated their substantive due process, based upon allegations that "COUNTY staff and its consultants have intentionally misrepresented, and intentionally delayed, the background reports and information intended to be included within, and

6

support, the General Plan 2035 update." Towers IV, 2:16-CV-02417-MCE-KJN, ECF No. 1 at 21. With various motions to dismiss still pending, the Towerses voluntarily dismissed Towers IV on December 8, 2016. Id., 2:16-CV-02417-MCE-KJN, ECF No. 28. "[O]n or about December 13, 2016 the Board of Supervisors adopted the 2035 Plan" which listed plaintiff's property as OS/RC. (Comp. ¶ 10.)

B. Restraining Orders (County v. Towers)

On October 25, 2016, the County served Roger Towers with a temporary restraining order, a petition for a workplace violence restraining order, and a notice of hearing, based upon his allegedly threatening behavior against County employees Kerry Sullivan and Amy Skewes-Cox. (RJN, Exs. 10 & 11.) The County also initiated the state court action San Joaquin County Counsel's Office v. Rogers Towers ("County v. Towers"), Case No. STK-CV-UWV-2016-0010753, currently on appeal as Case No. C084030.

A hearing was held on the restraining orders on November 18, 2016. (RJN, Ex. 12.) The superior court judge determined that while Towers' activities occurred at public sessions where he had a right to be, the "credible threat of violence including the course of conduct [placed] Ms. Sullivan and Ms. Skewes-Cox in reasonable fear for their own safety and would place any reasonable person in fear for their own safety." (RJN, Ex. 12, at 151–52.) The superior court further concluded that the County had established workplace violence by clear and convincing evidence, and issued a three year workplace violence restraining order. (RJN, Ex. 13.) Towers' motion to set aside the judgment was denied on January 13, 2017. (RJN, Ex. 14.) He then filed an appeal with the Third District Court of Appeal on February 3, 2017, which is still pending. (RJN, Ex. 15.) In his opening appellate brief, Towers asserts many of the same arguments that he does in this action—that issuance of the temporary restraining order against him violated due process and that the workplace violence restraining order violates his rights under the First Amendment. (RJN, Ex. 17, at 18, 31–33, 35–36.)

C. Complaint and Procedural History

Plaintiff filed the current matter on December 8, 2017, and paid the filing fee. (ECF No. 1.) In the operative complaint, he seeks a declaratory judgment against defendant. In relevant

part, plaintiff requests that the court declare:

> a) The OS/RC designation of TOWERS' property denies all reasonable economic use of TOWERS' Property. . . .
>
> b) The OS/RC land use designation of the 2035 General Plan, as it relates to the Property and the area surrounding the Property, has been arbitrarily, irrationally, and discriminatorily drawn in violation of the Fourteenth Amendment, and was therefore a void act. . . .
>
> c) The decision of the San Joaquin County Superior Court to issue a TRO and a Workplace Violence Restraining Order was without due process of law and otherwise violated TOWERS' rights under the First Amendment. . . .
>
> d) TOWERS has a right to speak his mind during public comment periods on matters before the San Joaquin County Planning Commission or the San Joaquin County Board of Supervisors including the right to criticize public officials or be angry while making such comments. Such speech on public issues is at the core of that which is protected by the First Amendment. . . .

(ECF No. 1 at 9–10.)

On January 10, 2018, thirty-three days after filing his complaint, plaintiff filed a motion for partial summary judgment, while simultaneously reporting that defendant had just been served on January 9, 2018. (See ECF Nos. 5, 6.) The court denied plaintiff's motion for partial summary judgment as premature. (ECF No. 7.) Thereafter, defendant filed the pending motion to dismiss. (ECF No. 11.) Plaintiff then filed a second motion for partial summary judgment. (ECF No. 13.) The parties opposed and replied to each motion. (ECF Nos. 23–26.)

D. <u>Admissions at the Hearing</u>

At the March 8, 2018 hearing, plaintiff made a number of important admissions. First, the undersigned questioned plaintiff about the land use designation in the 2035 General Plan that plaintiff purportedly challenges here. Plaintiff admitted that his issues with the land use designation date back to 2001, when he first bought his property. Ever since that time, the County has allegedly continued to prevent plaintiff from using his property. In this respect, by plaintiff's own admission, the 2035 General Plan has not substantively changed how the County treats plaintiff's property. Moreover, while plaintiff does not accept the validity of the OS/RC designation, his land was so designated by the County in the 2010 General Plan, and it remains so

designated in the 2035 General Plan.

Second, plaintiff has asserted in his briefing that he was forced to dismiss his prior federal case, Towers IV, to defend against the restraining order action, County v. Towers. (ECF No. 14 at 5.) When questioned at the hearing, however, plaintiff admitted that he was not compelled to dismiss Towers IV. Rather, he dismissed the case because he was overwhelmed and did not have the time, energy, or resources to either continue to represent himself in both cases, or to hire an attorney.

Third, in response to further questioning, plaintiff admitted that the main reason that he has brought this action in federal court is due to his frustration with the state court decisions. As explained above, the Third District Court of Appeal has already ruled against him in Towers II and Towers III. What is apparently equally frustrating to plaintiff is the current appeal pending before the Third District Court of Appeal in County v. Towers. At the hearing, plaintiff reiterated his briefed arguments that the state court has not adequately addressed his First Amendment claims in County v. Towers because they have not decided the issues as quickly as he asserts the law requires. At the same time, plaintiff admitted that he has received decisions from the Third District Court of Appeal, denying his requests for writ treatment and for a writ of supersedeas to prevent criminal enforcement of the workplace violence restraining order. Yet, he has not petitioned the California Supreme Court for review of any of these decisions. (ECF No. 24 at 16.)

II.  DISCUSSION

    A.  Motion to Dismiss

        1.  *Legal Standard*

A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the pleadings set forth in the complaint. Vega v. JPMorgan Chase Bank, N.A., 654 F. Supp. 2d 1104, 1109 (E.D. Cal. 2009). Under the "notice pleading" standard of the Federal Rules of Civil Procedure, a plaintiff's complaint must provide, in part, a "short and plain statement" of plaintiff's claims showing entitlement to relief. Fed. R. Civ. P. 8(a)(2); see also Paulsen v. CNF, Inc., 559 F.3d 1061, 1071 (9th Cir. 2009). "To survive a motion to dismiss,

a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In considering a motion to dismiss for failure to state a claim, the court accepts all of the facts alleged in the complaint as true and construes them in the light most favorable to the plaintiff. Corrie v. Caterpillar, Inc., 503 F.3d 974, 977 (9th Cir. 2007). The court is "not, however, required to accept as true conclusory allegations that are contradicted by documents referred to in the complaint, and [the court does] not necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations." Paulsen, 559 F.3d at 1071. The court must construe a pro se pleading liberally to determine if it states a claim and, prior to dismissal, tell a plaintiff of deficiencies in his complaint and give plaintiff an opportunity to cure them if it appears at all possible that the plaintiff can correct the defect. See Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000) (en banc); accord Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990) (stating that "pro se pleadings are liberally construed, particularly where civil rights claims are involved"); see also Hebbe v. Pliler, 627 F.3d 338, 342 & n.7 (9th Cir. 2010) (stating that courts continue to construe pro se filings liberally even when evaluating them under the standard announced in Iqbal).

In ruling on a motion to dismiss filed pursuant to Rule 12(b)(6), the court "may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." Outdoor Media Group, Inc. v. City of Beaumont, 506 F.3d 895, 899 (9th Cir. 2007) (citation and quotation marks omitted). Although the court may not consider a memorandum in opposition to a defendant's motion to dismiss to determine the propriety of a Rule 12(b)(6) motion, see Schneider v. Cal. Dep't of Corrections, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998), it may consider allegations raised in opposition papers in deciding whether to grant leave to amend, see, e.g., Broam v. Bogan, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003).

2.   *Land Use Designation Claims*

As explained, in Towers II plaintiff previously challenged the County's OS/RC designation of his property. The San Joaquin Superior Court dismissed the third and fifth causes of action, concluding that plaintiff's challenges were barred by the relevant statute of limitations, and that he did not otherwise demonstrate that the County had violated his due process. (See RJN, Ex 4.) The Third District Court of Appeal subsequently affirmed these rulings, and the California Supreme Court denied plaintiff's petition for review. See Towers II, 2017 WL 3275178; RJN Ex. 9.

Here, plaintiff once again challenges the OS/RC designation of his property. He asserts that the OS/RC designation "denies all reasonable economic use of [his] Property. . . . [and that t]he OS/RC land use designation of the 2035 General Plan, as it relates to the Property and the area surrounding the Property, has been arbitrarily, irrationally, and discriminatorily drawn in violation of the Fourteenth Amendment." (ECF No. 1 at 9–10.) As plaintiff admitted during the March 8, 2018 hearing, his complaints concerning the OS/RC designation are long-standing, dating back to when he obtained the property in 2001, and are centered on the allegation that he has remained unable to use his property ever since that date. Importantly, the adoption of 2035 General Plan did not substantively alter the County's designation of plaintiff's property—it was and remains designated OS/RC.

Relying on the doctrines of claim and issue preclusion, defendant asserts that plaintiff "is precluded from bringing claims concerning the OS/RC designation of his property because [in Towers II] the San Joaquin Superior Court and the Third District Court of Appeal already ruled on the issues he wishes to relitigate in this forum." (ECF No. 11-1 at 6.)

i.   **Claim Preclusion**

Claim preclusion "bars litigation in a subsequent action of any claims that were raised or could have been raised in the prior action. . . . The doctrine is applicable whenever there is (1) an identity of claims, (2) a final judgment on the merits, and (3) identity or privity between parties." Owens v. Kaiser Foundation Health Plan, Inc., 244 F.3d 708, 713 (9th Cir. 2001) (internal citations and quotation marks omitted). The Ninth Circuit has identified four factors that should

11

be considered by a court in determining whether successive lawsuits involve an identity of claims:

(1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action;

(2) whether substantially the same evidence is presented in the two actions;

(3) whether the two suits involve infringement of the same right; and

(4) whether the two suits arise out of the same transactional nucleus of facts. See C.D. Anderson & Co. v. Lemos, 832 F.2d 1097, 1100 (9th Cir.1987); accord Headwaters Inc. v. United States Forest Serv., 399 F.3d 1047, 1052 (9th Cir. 2005); Littlejohn v. United States, 321 F.3d 915, 920 (9th Cir. 2003). "The central criterion in determining whether there is an identity of claims between the first and second adjudications is whether the two suits arise out of the same transactional nucleus of facts." Owens, 244 F.3d at 714.

Plaintiff does not directly address the elements of issue preclusion, but construing his opposition liberally, he appears to argue that issue preclusion does not apply because there is no identity of claims. (See ECF No. 24 at 11–13.)

It is undisputed that there is identity between the parties. Both plaintiff Roger Towers and defendant the County of San Joaquin were parties to Towers II. Similarly, the opinion of the Third District Court of Appeal in Towers II—affirming the trial court's dismissal of the third cause of action without leave to amend, and summary adjudication of the fifth cause of action—is a final judgment on the merits. "Dismissal of an action with prejudice, or without leave to amend, is considered a final judgment on the merits." Nnachi v. City of San Francisco, 2010 WL 3398545, at *5 (N.D. Cal. Aug. 27, 2010) (citing Headwaters Inc. v. U.S. Forest Serv., 399 F.3d 1047, 1052 (9th Cir. 2005)).

Moreover, there is an identity of claims between Towers II and the instant matter. First, Towers II clearly established that plaintiff's ability to challenge the OS/RC designation is foreclosed by the statute of limitations. 2017 WL 3275178, at *15–16. Therefore, to allow plaintiff to revive this claim here would impermissibly disturb the rights Towers II imparted on the County, which has a reasonable expectation to not have to relitigate a previously barred claim.

Second, the complaint here involves substantially the same evidence as in Towers II—allegedly fabricated maps. Third, the same rights are at stake here as in Towers II—plaintiff's Fourteenth Amendment rights. Fourth, as this discussion demonstrates, the complaint here centers on the same transactional nucleus of facts as in Towers II. The fact that plaintiff is now challenging the long-standing OS/RC designation that is once again contained in the County's newest general plan does not change the fact that plaintiff is seeking to relitigate the same claims that he lost in Towers II.

Additionally, plaintiff's argument that there is no identity of claims because the state courts never considered or ruled on his substantive due process claim is not well taken. First, the superior court explicitly ruled on this claim. (See "March 21, 2013 Judgement" RJN 4 at 7 "the Court granted summary adjudication on the procedural due process and substantive due process cases of action contained in the Fifth Cause of Action"). Second, assuming that the state court did not appropriately consider this argument in Towers II, the proper way to remedy such a mistake is through direct appeal of the underlying action. Third, claim preclusion bars further litigation of any claim that was or *could have been* brought in the prior action. See Owens, 244 F.3d at 713. Even assuming that plaintiff's substantive due process challenge to the OS/RC designation is being raised for the first time in this matter, because such a claim could have been raised in Towers II, it is now barred by claim preclusion.

Therefore, plaintiff's land use designation claims are barred by claim preclusion.

          ii.    **Issue Preclusion**

Issue preclusion bars "successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, whether or not the issue arises on the same or different claim." New Hampshire v. Maine, 532 U.S. 742, 749 (2001). "A party invoking issue preclusion must show:

    (1) the issue at stake is identical to an issue raised in the prior litigation;

    (2) the issue was actually litigated in the prior litigation; and

    (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in the earlier action." Littlejohn, 321 F. 3d at 923. The "actually

litigated" requirement is satisfied where the parties "have a full and fair opportunity to litigate the merits of the issue." Id.

Plaintiff also failed to directly address the elements of issue preclusion in his opposition. However, similar to the claim preclusion analysis above, plaintiff's claims regarding the land use designation are barred by issue preclusion.

First, as explained, the issues plaintiff raises here are substantively identical to those raised in Towers II—whether the county's OS/RC land use designation was properly determined and whether the County violated plaintiff's due process when making that designation. Second, these issues were actually litigated in Towers II, as evidenced by the multiple rulings by the trial court (see RJN, Ex. 4) and by the opinion of the Third District Court of Appeal (see 2017 WL 3275178). Further, notwithstanding plaintiff's dissatisfaction with the state courts' rulings, plaintiff had a full and fair opportunity to litigate these issues. He raised arguments in the trial court, and then again on appeal, where he had ample opportunity to brief and argue these issues. Third, these issues were a critical and necessary part of the judgment in Towers II because by deciding these issues the court was able to dispense with two out of plaintiff's five claims in that matter. (See RJN, Ex. 4 at 7, 69–84, 116–19; Towers II, 2017 WL 3275178, at *15–16, 28.)

        3.    *Restraining Order Claims*

Plaintiffs remaining claims here pertain to the County's restraining orders in County v. Towers that plaintiff asserts violate his First Amendment rights. (ECF No. 1 at 9–10.) These same issues are currently on appeal before the Third District Court of Appeal. (RJN Exs. 15, 16, 17.) Defendant argues that this court "should abstain and allow the Third District Court of Appeal[] to decide the constitutionality of and other issues regarding the TRO and Workplace Violence Restraining Order." (See ECF No. 11-1 at 8–9.)

"The Supreme Court in Younger [v. Harris, 401 U.S. 37, 38 (1971),] 'espouse[d] a strong federal policy against federal-court interference with pending state judicial proceedings.'" H.C. ex rel. Gordon v. Koppel, 203 F.3d 610, 613 (9th Cir. 2000) (quoting Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 431 (1982)). "Absent extraordinary circumstances, Younger abstention is required if the state proceedings are (1) ongoing,

(2) implicate important state interests, and (3) provide the plaintiff an adequate opportunity to litigate federal claims." San Remo Hotel v. City & Cnty. of S.F., 145 F.3d 1095, 1103 (9th Cir. 1998). "When the case is one in which the Younger doctrine applies, the case must be dismissed." Koppel, 203 F.3d at 613. "Extraordinary circumstances" include "a statute [that is] ... flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph," as well as "bad faith and harassment." Younger, 401 U.S. at 53.

Plaintiff does not dispute that state proceedings are ongoing in County v. Towers. (See ECF No. 24 at 14–16.) Nor does plaintiff dispute that the the state courts have an important interest in determining the validity of restraining orders obtained by a county government.

Instead, plaintiff argues that Younger abstention does not apply because the state court proceeding does not afford him an adequate opportunity to litigate his constitutional claims because the the Third District Court of Appeal is biased against him as it allegedly "has no intent to comply with a federal mandate to speedily hear and decide this First Amendment case." (ECF No. 24 at 16.) Additionally, plaintiff argues that this matter represents extraordinary circumstances that obviate the application of Younger abstention because "the pleadings (and evidence) clearly show that the restraining order was based on false affidavits and testimony," demonstrating that the County was engaged in a bad faith prosecution and flagrant constitutional violations against plaintiff. (Id. at 18.) Plaintiff's arguments are unpersuasive.

First, plaintiff has not demonstrated any bias by the California courts—ruling against him and not acting as quickly as he would like does not constitute bias. Indeed, there is no guarantee that a federal court would have decided these issues any faster. Moreover, plaintiff admits that he has not even attempted an interlocutory appeal or petition to the California Supreme Court. (ECF No. 24 at 16.) Therefore, the court finds that plaintiff has an adequate opportunity to litigate his federal claims in the pending matter.

Second, contrary to plaintiff's assertions, he has not sufficiently demonstrated "extraordinary circumstances" based on the County's alleged bad faith in seeking these restraining orders, so as to prevent the application of Younger. In order for this court to determine whether plaintiff's assertions of "bad faith" against the County have any merit, this

15

court would have to make factual findings that are central to the pending state court action. Making such a ruling would run afoul of the very policies of Younger abstention.

Therefore, Younger abstention directs this court to refrain from interfering with the pending state judicial proceedings, and to dismiss plaintiff's claims regarding the County's restraining orders.

                4. *Leave to amend*

Federal Rule of Civil Procedure 15(a) provides that a court should generally freely give leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). Five factors are frequently used to assess whether leave to amend should be granted: (1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) futility of the amendment; and (5) whether plaintiff has previously amended her complaint. Johnson v. Buckley, 356 F.3d 1067, 1077 (9th Cir. 2004); Allen v. City of Beverly Hills, 911 F.2d 367, 373 (9th Cir. 1990). "The district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint." Allen, 911 F.2d at 373.

Here, leave to amend would be futile because each of plaintiff's claims is bared by either claim and issue preclusion or by Younger abstention, and plaintiff could not cure these deficiencies by alleging additional consistent facts.

    B.    Motion for Partial Summary Judgment

Plaintiff's motion for partial summary judgment is moot because the undersigned recommends dismissal of the complaint with prejudice, without leave to amend.

III.    CONCLUSION

For the reasons discussed above, IT IS HEREBY RECOMMENDED that:

1. Defendant's motions to dismiss (ECF No. 11) be GRANTED.
2. Plaintiff's complaint be DISMISSED WITH PREJUDICE.
3. Plaintiff's motion for partial summary judgment (ECF No. 13) be DENIED as moot.
4. The Clerk of Court be ordered to close this case.

In light of these recommendations, IT IS ALSO HEREBY ORDERED that all pleading, discovery, and motion practice in this action are STAYED pending resolution of the findings and

recommendations. With the exception of objections to the findings and recommendations and any non-frivolous motions for emergency relief, the court will not entertain or respond to any motions and other filings until the findings and recommendations are resolved.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served on all parties and filed with the court within fourteen (14) days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Turner v. Duncan</u>, 158 F.3d 449, 455 (9th Cir. 1998); <u>Martinez v. Ylst</u>, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

IT IS SO ORDERED AND RECOMMENDED.

Dated: March 13, 2018

14/ps.17-2597.towers.f&R MTD and MPSJ

_/s/ Kendall J. Newman_
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE